UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

STEVEN CHERENFANT,

      Defendant.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**
15-CR-0287-11 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On May 11, 2017, Steven Cherenfant pleaded guilty to a lesser-included offense within Count Five of the Superseding Indictment. The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Steven Cherenfant is hereby sentenced to 135 months of incarceration, 3 years of supervised release, and a $100.00 special assessment.

## BACKGROUND

On July 15, 2015, the United States filed a seventy-five count Superseding Indictment against twenty-three defendants, including Steven Cherenfant ("Defendant"). *See* Superseding Indictment, ECF No. 48. On May 11, 2017, Defendant pleaded guilty to a lesser-included offense within Count Five of the Superseding Indictment, which charged a Narcotics Trafficking Conspiracy. *See* Plea Agreement ¶ 1, ECF No. 425.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

**I. Legal Standard**

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . .

. the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form[.]" *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## II. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant, now twenty-six years old, was born in Brooklyn, New York on March 7, 1992. Presentence Investigation Report ("PSR") ¶ 66, ECF No. 480. Defendant is one of seven children born to the consensual union of Stanley Rene and Nirva Cherenfant, who have separated. *Id.* Defendant's father resides in Brooklyn, New York, and is employed installing glass. *Id.* Defendant's mother resides at the address of record, and is employed as a home health aide. *Id.* Defendant's mother has a prior federal conviction in the Eastern District of New York for Conspiracy to Defraud, and she was sentenced to twenty-four months probation by the Honorable Reena Raggi. *Id.* Defendant's parents remain supportive. *Id.*

Two of Defendant's brothers, Stanley Cherenfant and Stephon Rene, were also charged in connection with the instant offense and are incarcerated. *Id.* ¶ 68. Defendant's other four siblings reside in Brooklyn. *Id.* Defendant was primarily raised by his mother in a middle-income household. *Id.* ¶ 69. He recalled that despite the parents' separation, his father remained involved in his life. *Id.*

From 2008 to 2014, Defendant was romantically involved with Tiffany Harvey. *Id.* ¶ 70. The relationship ended because of Defendant's instant arrest. *Id.* Ms. Harvey resides in Brooklyn, is healthy, her employment status is unknown, and the Probation Department was unable to locate her and interview her. *Id.* Defendant advised Probation that Ms. Harvey is a high school graduate. *Id.* One son was produced from this relationship. *Id.* According to the Defendant, he financially supported his son prior to his instant arrest. *Id.* An Equifax credit report revealed an outstanding debt owed to the New York State Department of Social Services for family support in the amount of $9,072. *Id.* The defense notes Defendant's son has been living with Defendant's mother for the past few months. Defendant's Sentencing Mem. at 6, ECF No. 589.

From 2007 to 2010, Defendant attended the ninth through the eleventh grades at Louis D. Brandeis High School in New York, New York. PSR ¶ 82. However, in 2010, Defendant was shot in his mouth and the lower part of his right arm. *Id.* ¶ 74. Defendant explained that he was standing on a block in Brooklyn, and he was struck by stray bullets. *Id.* The surgeons were unable to remove the bullets from his mouth, and they placed two metal plates under his jaw. *Id.* Defendant stated he was hospitalized for 33 days, and he was unable to speak for 29 days of it because he had a tracheotomy in his neck to breathe. *Id.* Defendant noted he continues to suffer occasional pain in his mouth. *Id.* With regard to his right arm, Defendant advised that the bullet

3

went through his arm, and he suffered nerve damage in his arm. *Id.* As a result, Defendant suffers occasional shaking in his hand, and he has lost strength in that arm. *Id.* Defendant stated that he was visited by a psychologist on a few occasions while hospitalized at Kings County Hospital in connection with the above-noted shooting. *Id.* ¶ 78. He advised Probation that he is mentally healthy, and he has not received any additional treatment. *Id.*

According to the medical records from the Metropolitan Detention Center (MDC) in Brooklyn, New York, on October 27, 2015, Defendant was taken to medical after being involved in an altercation. *Id.* ¶ 75. Additionally, on March 6, 2016, Defendant was escorted out of his unit by an officer. *Id.* ¶ 76. Defendant denied being involved in a physical altercation, and he had food residue on his clothing. *Id.* The medical staff notes that it appeared Defendant was preparing "hooch" homemade wine in his cell. *Id.* No injuries were reported by Defendant. *Id.*

Prior to his arrest, Defendant reportedly consumed a single alcoholic beverage three times per week. *Id.* ¶ 79. Defendant advised he first smoked marijuana at age fifteen, and he last smoked it prior to his instant arrest. *Id.* He estimated that he smoked marijuana four times per week, and he would use "as much as [he] could get." *Id.* Defendant acknowledged he had a problem with marijuana, and he is amenable to drug treatment. *Id.*

Defendant was previously employed as a day laborer for an unrecalled construction company. *Id.* ¶ 83. However, this was not a regular job, and Defendant estimates he worked no more than 26 weeks per year. *See* Defendant's Sentencing Mem. at 2. This is the only employment Probation reports for the Defendant. PSR ¶ 83.

According to Bureau of Prisons SENTRY database, Defendant has been incarcerated at the MDC in Brooklyn, New York, since July 16, 2015. *Id.* ¶ 72. The database also revealed several disciplinary infractions for Defendant, including being in an unauthorized area, refusing

4

work/program assignment, fighting with another inmate, refusing to obey an order, and destroying and disposing of an item and smoking in an unauthorized area. *Id.*

Defendant has a substantial criminal history, which includes criminal possession of marijuana in the fifth degree at age sixteen, criminal possession of marijuana in the fifth degree at age twenty, criminal possession of a controlled substance in the seventh degree at age twenty-one (which is part of the instant offense), and criminal possession of a weapon in the second degree at age twenty-three. *Id.* ¶¶ 56-59. Regarding the last crime, Defendant shot an individual in the leg who Defendant alleges was trying to jump him. *Id.* ¶ 59. Defendant was sentenced by the state court to forty-two months custody and five years post-release supervision. *Id.* Probation reports that the local presentence report indicates the sentence on this offense was ordered to run concurrently to the instant federal offense sentence. *Id.*

Defendant was a member of the Eight Trey and an associate of the Outlaw Gangsta Crips ("the OGC"). *Id.* ¶ 9. He was also a member of the Shoota Gang ("SG"). *Id.* The OGC was a gang comprised primarily of individuals residing in and around the East Flatbush neighborhood of Brooklyn, New York, and was a "set," or subgroup, of the Crips street gang. *Id.* ¶ 4. SG was an offshoot of OGC which included members and associates of OGC as well as members and associates of other gangs, including the Eight Trey, Bosses In Business and the Bloods. *Id.* Members and associates of OGC have engaged in drug trafficking, fraud, firearms trafficking and promoting prostitution, and have committed acts of violence, including murder, attempted murder, robbery and assault, as well as other crimes. *Id.* The purposes of OGC included enriching the gang; promoting and enhancing the gang's prestige, reputation, and position among rival gangs; preserving and protecting the gang's power, territory, and criminal ventures;

maintaining fear of the gang in their victims and rivals; and concealing the gang's criminal activity from law enforcement. *Id.* ¶ 6.

Defendant was a street-level narcotics distributor and sold cocaine base to various individuals. *Id.* ¶ 37. As stipulated to in the plea agreement, Defendant is accountable for at least 840 grams of cocaine base. *Id.* In addition, two firearms were recovered from Defendant's apartments following his arrest. Gov't Sentencing Mem. at 2, ECF No. 592; Plea Agreement ¶ 2; Def. Sentencing Mem. at 2.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

Defendant's crime both provided dangerous and illegal drugs to his community and helped to fund unlawful gang activity. The Court's sentence recognizes the seriousness of this offense and punishes Defendant accordingly. It seeks to deter Defendant from further criminal activity and encourages him to sever his ties to Eight Trey, Shoota Gang, and the OGC. More generally, the Court's sentence sends a message to other gang members that a life of crime carries a risk of punishment that outweighs any potential gains. Finally, it also considers Defendant's family and community support and his desire to be a present father.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pleaded guilty to one count of Narcotics Trafficking Conspiracy, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). He faces a maximum term of imprisonment of twenty years. *See* 21 U.S.C. § 841(b)(1)(C). Defendant also faces: a minimum term of supervised release of three years, 21 U.S.C. § 841(b)(1)(C); not less than one and no more than five years of probation, 18 U.S.C. § 3561(c)(1); a maximum fine of $1,000,000.00, 21 U.S.C. § 841(b)(1)(C); and a special assessment of $100.00, 18 U.S.C. § 3013. Under the plea agreement, Defendant faces a forfeiture money judgment of $1,000,000.00. *See* Plea Agreement ¶¶ 6-13.

### D. The Kinds of Sentence and the Sentencing Range Established For Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

Guidelines § 2D1.1 applies to violations of 21 U.S.C. § 846 and sets a base offense level of thirty-two. *See* United States Sentencing Commission, *Guidelines Manual*, § 2D1.1(c)(4) (Nov. 2016) ("USSG").

As the instant offense involved the possession of firearms, a two-level enhancement is warranted per Guideline § 2D1.1(b)(1). *See* Plea Agreement ¶ 2.

Defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. USSG § 3E1.1(a). Because the Government was notified in a timely manner of Defendant's intention to enter a plea of guilty,

the offense level is decreased by one additional level. USSG § 3E1.1(b). All parties agree that Defendant should receive a three-point reduction for acceptance of responsibility. This would bring Defendant's total adjusted level to thirty-one.

In Defendant's plea agreement, the Government estimated that the Defendant would receive a two-level reduction "for a global resolution pursuant to U.S.S.G. § 5K2.0 . . . only if the conditions set forth in Paragraph 15 [of the plea agreement] are satisfied." Plea Agreement ¶ 2. Paragraph fifteen, in turn, provided that the reduction would apply only if: 1) eighteen listed defendants entered guilty pleas on or before May 17, 2017; and 2) those pleas were accepted by a United States District Court Judge at the time of the plea allocution or, if the plea was taken by a Magistrate Judge, on or before May 31, 2017. *Id.* ¶ 15. Not all of the listed defendants pled guilty by May 31, 2017, but all defendants have now pled guilty. Paragraph 15 of the plea agreement further states:

> If fewer than all of the covered defendants satisfy conditions 15(a) and 15(b), or if any of the covered defendants subsequently seeks to withdraw his guilty plea, the Office, in its sole discretion, may elect to void any or all of the covered defendants' plea agreements and proceed to trial. The Office may also elect not to recommend a two-level reduction under the Guidelines for a global disposition, as contemplated in Paragraph 2. However, if all of the following covered defendants satisfy conditions 15(a) and 15(b) and the Office does not elect to void the defendant's plea agreement, the Office agrees to recommend a one-level reduction under the Guidelines for a global disposition: Stanley Cherenfant, Steven Cherenfant, Aikiam Floyd, Brandon Greenidge, Jeffrey Joseph, Silbert Nicholson, Zadek Orgias and Stephon Rene. No covered defendant will have the right to withdraw his guilty plea in any of those circumstances.

In its Guidelines calculation, Probation does not account for any Global Resolution reduction, and arrives at a total adjusted offense level of thirty-one. PSR ¶ 54. Defendant's criminal history, described *supra*, results in a criminal history score of five, establishing a

criminal history category of III.[1] USSG Ch. 5, Part A. With a criminal history category of III and a total adjusted offense level of 31, the Guidelines imprisonment range is 135 to 168 months. PSR ¶ 90. The Probation Department reported in the PSR that the Government agreed to a one-level reduction per Policy Statement 5K2.0. *Id.* ¶ 106. A one-level reduction would result in a total offense level of thirty, and with a criminal history category of III, the advisory guideline imprisonment range would be 121 to 151 months. *Id.* Probation recommends 151 months custody to run consecutively to the New York State undischarged sentence, and 3 years supervised release, with special conditions. Probation Sentence Recommendation at 1, ECF No. 480-1.

In its sentencing memorandum, however, the Government stands by the two-level Global Resolution reduction in the plea agreement. The defense also advocates for the two-level Global Resolution reduction contemplated by the plea agreement, which would bring Defendant's adjusted offense level to 29. Def. Sentencing Mem. at 1. With a criminal history category of III, the Guidelines range would be 108-135 months. The Government requests a sentence within that Guidelines range, and the defense requests a below Guidelines sentence of 96 months. *Id.* at 13.

The Court finds the appropriate total offense level is 29, which, with a criminal history category of III, yields a Guidelines suggested term of imprisonment of between 108 and 135 months. USSG Ch. 5, Part A. Per Guidelines Policy Statement 5G1.3(d), the sentence for the instant offense may be imposed to run concurrently, partially concurrently or consecutively to

---

[1] Although the plea agreement contemplated a criminal history category of I, the defense and Government now agree that category III is the correct category. *See* Def Sentencing Mem. at 1; Gov't Sentencing Mem. at 3.

the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense. Defendant may also be sentenced to a term of supervised release of three years, *id.* § 5D1.2(a)(2)[2]; a fine of between $15,000.00 and $1,000,000.00, *id.* § 5E1.2(c)(4), (h)(1); and payment of the costs of prosecution, *id.* § 5E1.5. The Guidelines further suggest Defendant is ineligible for probation. *Id.* § 5B1.1, n.2.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, requiring the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), is not relevant to Defendant's sentencing beyond the above discussed Global Resolution reduction and Policy Statement 5G1.3(d).

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Defendant is one of twenty-three defendants in this case, and the Court will craft a unique sentence for each defendant. For the reasons stated in this memorandum and order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

---

[2] The Guidelines suggest a supervised release term of one to three years. *See* USSG § 5D1.2(a)(2). However, the statutory minimum is three years. 21 U.S.C. § 841(b)(1)(C).

## G. The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7), is not applicable in Defendant's case, *see* 18 U.S.C. § 3663.

## CONCLUSION

A sentence of 135 months of incarceration to run concurrently with the undischarged state term of imprisonment, to be followed by 3 years of supervised release, and a $100.00 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and addendum thereto and imposes the special conditions of release proposed by the Probation Department.

**SO ORDERED.**

      s/WFK
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: August 13, 2018
      Brooklyn, New York